```
┌─────────────────────────────────────┐
│            FILED                     │
│                                      │
│          JUN 3 0 2011                │
│ ──────────────────────────────────  │
│  Deputy Clerk, U.S. District Court   │
│    Middle District of Louisiana      │
│        Baton Rouge, La.              │
└─────────────────────────────────────┘
```

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

### INDICTMENT FOR HEALTH CARE FRAUD, MONEY LAUNDERING AND FORFEITURE ALLEGATION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 11- 64 - FJP-DLD |
| *versus* | : | |
| | : | 18 U.S.C. § 1347 |
| SONYA LEWIS WILLIAMS | : | 18 U.S.C. § 1957 |
| CARLA M. CLARK | : | 18 U.S.C. § 982(a)(7) |
| LILLIE LAVAN | : | 18 U.S.C. § 2 |

THE GRAND JURY CHARGES:

AT ALL TIMES RELEVANT TO THIS INDICTMENT:

1.    **SONYA LEWIS WILLIAMS (WILLIAMS)**, a defendant herein, organized, owned, managed, and operated Fusion Services, L.L.C ("Fusion"), and Grace Social Services, L.L.C. ("Grace"). **WILLIAMS** was the owner, officer, and manager of Fusion and Grace, which were located in Alexandria, Louisiana. **WILLIAMS** managed and operated the companies from Baton Rouge, Louisiana. **WILLIAMS** applied for a provider number and was approved to participate in the Medicare Program ("Medicare") in the State of Louisiana. **WILLIAMS** prepared and submitted, and caused others to prepare and submit, false claims to Medicare on behalf of Fusion and Grace. **WILLIAMS'** claims falsely represented that licensed clinical social workers ("LCSWs") employed by Fusion and Grace

actually rendered individual face-to-face psychotherapy services to Medicare beneficiaries, when, in truth and fact, the beneficiaries never received individual face-to-face psychotherapy services.

2.      **CARLA M. CLARK (CLARK)** and **LILLIE LAVAN (LAVAN)**, defendants herein, were LCSWs employed by Fusion.  As such, **CLARK** and **LAVAN,** in association with Fusion, enrolled with Medicare as  "participating providers" ("providers") of psychotherapy services to Medicare beneficiaries and agreed to comply with Medicare laws, regulations, and program instructions.

3.      **CLARK** was employed by Fusion for the purported purpose of performing individual psychotherapy, face-to-face with Medicare beneficiaries.  **CLARK**, among other things:

a.      allowed her Medicare provider number to be used by **WILLIAMS** to bill Medicare for services that were never provided and services that were not remibursable by Medicare ;

b.      created, and participated in creating, false and misleading Fusion and Grace records indicating that face-to-face individual psychotherapy services had been provided, when, in truth and fact, no such services had been provided; and

c.      knowingly caused false billings to be submitted to Medicare for Fusion beneficiaries.

2

4.      **LAVAN** was employed by Fusion for the purported purpose of performing individual psychotherapy, face-to-face with Medicare beneficiaries.  **LAVAN**, among other things:

    a.      allowed her Medicare provider number to be used by **WILLIAMS** to bill Medicare for services that were never provided and services that were not remibursable by Medicare;

    b.      created, and participated in creating, false and misleading Fusion records indicating that face-to-face individual psychotherapy services had been provided, when, in truth and fact, no such services had been provided; and

    c.      knowingly caused false billings to be submitted to Medicare for Fusion beneficiaries.

THE MEDICARE PROGRAM

5.      Medicare was a federally funded health insurance program that provided health care benefits to certain individuals, primarily the elderly, blind, and disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the United States Department of Health and Human Services ("HHS").  Individuals who received health care benefits under Medicare were referred to as Medicare "beneficiaries" or "patients."

6.      Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b); that is, Medicare was a public plan, affecting commerce, under which medical benefits were provided to, and paid for, Medicare beneficiaries.

7.      Medicare paid for certain "medically necessary" services furnished to Medicare beneficiaries by qualified individuals and entities who contracted with Medicare to provide medical services, items, and benefits.  The certain, medically necessary services paid for by Medicare were known as "covered services."  Those who furnished covered medical services to Medicare beneficiaries were designated as "providers."  These providers agreed to render covered, medically necessary services in accordance with federal laws, regulations and program instructions.  Once providers furnished covered, medically necessary services, they were entitled to payment for their work.

8.      Medicare included several Parts, including Part B, which paid for certain costs associated with individual psychotherapy services.  Medicare required that documentation of such services be kept by participating providers in order to be paid.

PSYCHOTHERAPY SERVICES AND BILLING PROCEDURES

9.      "Psychology" is a specialized field for the diagnosis and treatment of mental health disorders and diseases.  "Psychotherapy" is the treatment of mental illness and behavioral disturbances.  In order to be paid by Medicare, psychotherapy services must be performed by persons qualified to perform such services.  Psychotherapy requires that the qualified person establish contact with the patient, and through definitive therapeutic

4

communication, attempt to alleviate emotional disturbances, to reverse or to change maladaptive patterns of behavior, or to encourage personality growth and development.

10.     Medicare Part B laws, regulations, and program instructions required that individual psychotherapy services had to be provided by LCSWs in actual face-to-face meetings with Medicare beneficiaries, in order for the providers to obtain payment from Medicare.

11.     Medicare Part B paid for psychotherapy services performed by a "licensed clinical social worker," that is, an individual who possessed a master's or doctor's degree in social work; had performed at least two years of clinical social work; and was licensed by the State in which they performed psychotherapy services.

12.     Medicare Part B did not pay LCSWs who delegated the performance of psychotherapy services to others.  It also did not pay for the monitoring of activities of daily living, social interaction, recreational therapy, and teaching grooming skills.

13.     For providers to be paid for individual psychotherapy services which they performed, Medicare required the submission of "claims" (sometimes referred to as "billings") which, among other things, set forth the exact service provided, the date of service, and the LCSW who conducted the individual, face-to-face psychotherapy with the beneficiary.

14.     The claims for Fusion and Grace were electronically submitted from Baton Rouge to claims processing offices located in Arkansas.

15.     In order to bill Medicare for individual psychotherapy services performed face-to-face with Medicare beneficiaries, providers like Fusion and Grace (and any LCSWs these companies employed) had to be enrolled in, and approved as, Medicare providers.  To qualify as a Medicare provider, Fusion and Grace and any LCSW they employed were required to submit an application to the Medicare carrier (Pinnacle Business Solutions), an entity that contracted with Medicare to process applications for enrollment into the Medicare program.  If the applicant met minimal qualifications, Medicare enrolled the psychotherapy provider and issued a "provider number" which enabled the provider to submit bills to Medicare for the cost of face-to-face individual psychotherapy services provided by an LCSW.

16.     When applying for enrollment in Medicare, psychotherapy providers acknowledged, agreed and certified that they would comply with all Medicare laws, regulations, and program instructions; that such Medicare program information was available to them and that Medicare payments were based upon the submission of accurate and truthful claims.  Additionally, when enrolling in the Medicare program, providers acknowledged that they were aware that there were penalties for providing false or fraudulent information to Medicare.

17.     Claims, which could be submitted either in paper or electronic form, were required to contain truthful and accurate information about:

a.      the beneficiary, including his or her Medicare identification number and assorted other information;

6

b.      the LCSW's provider number and diagnosis justifying face-to-face individual psychotherapy services;

c.      the procedure code and date of the actual services rendered by the LCSW to the Medicare beneficiary; and

d.      the charges for the services furnished by the LCSW and actually provided to the Medicare beneficiary.

18.     In Louisiana, Medicare Part B was administered by Pinnacle Business Solutions, which had entered into a contract with HHS and CMS to serve as the entity or "carrier" that received, processed, and paid Medicare claims submitted by providers of psychotherapy services.

19.     Fusion and Grace submitted claims to the carrier using "procedure codes," a series of five-digit codes that corresponded to various types of medical treatments. Fusion and Grace typically submitted claims for procedure codes "90806" and "90808," which represented individual psychotherapy sessions provided in face-to-face meetings with the Medicare patient, for treatment of mental illness and behavior disturbances. Claims for procedure code 90806 required that the LCSW conduct individual psychotherapy face-to-face with the patient for at least 45 minutes, and procedure code 90808 required that the LCSW conduct individual psychotherapy face-to-face with the patient for at least 75 minutes.

**HEALTH CARE SCHEME TO DEFRAUD**

20.      Beginning in or about May 2006 and continuing to in or about September 2010, in the Middle District of Louisiana, the defendants, **SONYA LEWIS WILLIAMS**, **CARLA M. CLARK** and **LILLIE LAVAN**, and others known and unknown to the Grand Jury, knowingly and willfully did execute and attempt to execute a scheme and artifice to defraud Medicare, and to obtain money owned by and under the custody and control of Medicare, by means of false and fraudulent material pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits and services, and did aid and abet each other to do so.

21.      The health care fraud scheme included:

a.      submitting many claims to Medicare for individual, face-to-face psychotherapy services to individuals who had died;

b.      submitting many claims to Medicare for individual, face-to-face psychotherapy to individuals who were in the hospital and thus not entitled to Medicare Part B services;

c.      submitting many claims to Medicare for individual, face-to-face psychotherapy to individuals who never received such services;

d.      submitting many claims to Medicare for individual, face-to-face psychotherapy services when, in truth and fact, the beneficiaries participated in recreational group activities; and

8

e.      submitting many claims to Medicare for individual, face-to-face psychotherapy services when, in truth and fact, the beneficiary received something other than psychotherapy services, that was not reimbursable by Medicare.

## PURPOSES OF THE HEALTH CARE FRAUD SCHEME

22.      Among the various purposes of the scheme were:

a.      to defraud Medicare of truthful information necessary to the administration of the Medicare Program, by means of false and fraudulent material pretenses, representations, and promises;

b.      to obtain Medicare funds by means of false and fraudulent material pretenses, representations, and promises; and

c.      to unlawfully enrich each of the defendants.

## MANNER AND MEANS OF ACCOMPLISHING THE HEALTH CARE FRAUD SCHEME

23.      In furtherance of the scheme and to accomplish the purposes of the scheme, **WILLIAMS, CLARK,** and **LAVAN** used the following manner and means to commit, and cause to be committed, the following acts, among others, in the Middle District of Louisiana and elsewhere:

a.      **WILLIAMS** created Fusion and Grace and enrolled them with Medicare for the purported purpose of providing individual, face-to-face psychotherapy services to Medicare beneficiaries.

9

b.   **WILLIAMS** recruited LCSWs for the purpose of using their provider numbers to bill Medicare for: (i) individual, face-to-face psychotherapy services that were never provided, and (ii) individual, face-to-face psychotherapy services when, in truth and fact, the beneficiary received something other than psychotherapy services from persons not entitled to reimbursement by Medicare.

c.   **WILLIAMS** employed individuals who were not qualified to perform individual psychotherapy to Medicare beneficiaries for the purpose of misleading Medicare into believing that qualified individuals had provided individual, face-to-face psychotherapy to Medicare beneficiaries.

d.   **WILLIAMS**, **CLARK** and **LAVAN** participated in creating patient progress notes that falsely represented to Medicare that the employees had provided individual face-to-face psychotherapy services three times a week to certain beneficiaries, when, in truth and fact, the beneficiaries had participated in one group recreational or social activity that was not reimbursable by Medicare.

e.   **WILLIAMS**, **CLARK** and **LAVAN** participated in creating patient progress notes that falsely represented to Medicare that the employees had provided individual, face-to-face psychotherapy to beneficiaries when, in truth and fact, no such services had been provided.

f. **CLARK** and **LAVAN** reviewed and signed progress notes created by the unqualified individuals that reflected that no individual, face-to-face psychotherapy, or other service reimbursable by Medicare, had been provided.

g. **WILLIAMS** and **CLARK** recruited, and caused others to recruit, Medicare beneficiaries for participation in the purported psychotherapy program, which purported services were to be paid for by Medicare.

h. **WILLIAMS** and her employees requested and obtained beneficiaries' Medicare identification numbers for use in billing Medicare for individual, face-to-face psychotherapy by LCSWs which never occurred.

i. **WILLIAMS, CLARK** and **LAVAN**, created, and caused to be created, medical records reflecting that the beneficiaries were receiving individual, face-to-face psychotherapy when, in truth and fact, the services were not provided to the beneficiaries.

j. **WILLIAMS** instructed employees to submit time sheets reflecting three individual, face-to-face psychotherapy visits when only one group recreational or social activity had occurred, in order to conceal from Medicare the fact that the Medicare beneficiaries did not receive individual, face-to-face psychotherapy.

k. **WILLIAMS** prepared and submitted claims to Medicare for services purportedly rendered to beneficiaries who were dead.

11

l.     **WILLIAMS** prepared and submitted claims to Medicare for services purportedly rendered to persons who were hospitalized and therefore not entitled to services under Medicare Part B.

m.     **WILLIAMS** prepared and submitted claims to Medicare for services purportedly rendered to beneficiaries who were no longer receiving services from Fusion or Grace.

n.     **WILLIAMS, CLARK,** and **LAVAN** used false and fraudulent material representations to obtain Medicare payments, namely, they frequently represented that LCSWs employed by Fusion and Grace actually rendered individual psychotherapy services face-to-face with Medicare beneficiaries, when, in truth and fact, the Medicare beneficiaries did not receive face-to-face individual psychotherapy services from any LCSWs employed by Fusion or Grace.

o.     **WILLIAMS, CLARK,** and **LAVAN** caused claims of approximately $1,173,370 to be prepared and submitted to Medicare, which claims falsely represented that LCSWs employed by Fusion and Grace had conducted face-to-face, individual psychotherapy with Medicare beneficiaries.

p.     **WILLIAMS** collected payments of approximately $349,715 from Medicare as a result of the submission of false claims, and **WILLIAMS, CLARK,** and **LAVAN** shared in the proceeds of the scheme to defraud Medicare.

q.     **WILLIAMS** used Medicare payments to continue fraudulent billing practices and to enrich herself, **CLARK,** and **LAVAN.**

r.     In 2009, **CLARK** created, and caused others to create, patient progress notes for the purpose of concealing a lack of documentation that services were ever rendered to Medicare patients.

s.     Counts One through Fourteen of this Indictment are incorporated herein as acts in execution of the scheme to defraud Medicare.

## COUNTS ONE THROUGH FOURTEEN

## ACTS IN EXECUTION OF THE HEALTH CARE FRAUD SCHEME

24.     In order to execute and attempt to execute the scheme, and to accomplish the purposes of the scheme, the below named defendants, and others known and unknown to the Grand Jury, committed and caused others to commit, the following acts within the Middle District of Louisiana, namely, on or about the below listed dates, the named defendants caused false and fraudulent claims to be submitted to Medicare:

| CT. | DEFENDANTS | DATE OF CLAIM | BENE | CLAIM # | AMOUNT OF CLAIM |
|-----|-----------|---------------|------|---------|-----------------|
| 1 | **WILLIAMS** | March 6, 2007 | C.P. | 531107065003340 | $300.00 |
| 2 | **WILLIAMS CLARK** | June 17, 2008 | M.C. | 531108169187350 | $300.00 |
| 3 | **WILLIAMS** | December 9, 2008 | H.H. | 531108344341670 | $300.00 |
| 4 | **WILLIAMS** | December 15, 2008 | G.J. | 531108350394770 | $300.00 |

| CT. | DEFENDANTS | DATE OF CLAIM | BENE | CLAIM # | AMOUNT OF CLAIM |
|---|---|---|---|---|---|
| 5 | **WILLIAMS CLARK LAVAN** | December 15, 2008 | B.D. | 531108350394790 | $300.00 |
| 6 | **WILLIAMS CLARK LAVAN** | December 15, 2008 | K.S. | 531108350394670 | $300.00 |
| 7 | **WILLIAMS CLARK LAVAN** | December 15, 2008 | M.N. | 531108350394150 | $300.00 |
| 8 | **WILLIAMS CLARK LAVAN** | December 15, 2008 | J.C. | 531108350394710 | $300.00 |
| 9 | **WILLIAMS CLARK** | December 22, 2008 | L.T. | 531108357380170 | $300.00 |
| 10 | **WILLIAMS** | January 19, 2009 | S.W. | 531109019432020 | $300.00 |
| 11 | **WILLIAMS CLARK** | January 19, 2009 | M.J. | 531107012290480 | $300.00 |
| 12 | **WILLIAMS CLARK** | February 2, 2009 | L.A. | 531109033505010 | $300.00 |
| 13 | **WILLIAMS CLARK** | February 10, 2009 | I.S. | 531109041135240 | $120.00 |
| 14 | **WILLIAMS** | May 4, 2009 | L.J. | 531109124398030 | $300.00 |

Each of the above is a violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT FIFTEEN

25.     The Grand Jury re-alleges and adopts by reference paragraphs 1 through 24 of this Indictment.

26.     On or about May 28, 2009, in the Middle District of Louisiana, **SONYA LEWIS WILLIAMS**, defendant herein, knowingly engaged in a monetary transaction involving criminally derived property of a value greater than $10,000, which property was derived from a specified unlawful activity, namely health care fraud, that is, causing a cashier's check payable to **WILLIAMS** in the approximate amount of $193,000 to issue from **WILLIAMS'** personal accounts at Neighbors Federal Credit Union, which transaction affected interstate commerce.

The above is a violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION

27.     Upon conviction of any of the health care offenses set forth in Counts One through Fourteen of this Indictment, the defendants herein, **SONYA LEWIS WILLIAMS**, **CARLA M. CLARK**, and **LILLIE LAVAN** shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, including but not limited to a sum of money equal to $1,173,370.

28.     If any of the above described forfeitable property, as a result of any act or omission of the defendant:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

15

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without

difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p)

as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any

other property of said defendant up to the value of the forfeitable property described above.


UNITED STATES OF AMERICA, by          **A TRUE BILL**


_____          _____
DONALD J. CAZAYOUX, JR.                GRAND JURY FOREPERSON
United States Attorney
Middle District of Louisiana


_____          _____
CATHERINE M. MARAIST                     DATE          6/30/11
Assistant United States Attorney

**Criminal Cover Sheet**                                          **U.S. District Court**

**Place of Offense:**                    **Matter to be sealed:**  ☒ No   ☐ Yes

City _____Baton Rouge_____     **Related Case Information:**

County/Parish __East Baton Rouge___     Superseding Indictment _____ Docket Number _____
                                        Same Defendant _____     New Defendant __X___
                                        Magistrate Case Number _____
                                        Search Warrant Case No. _____
                                        R 20/ R 40 from District of _____
                                        **Any Other Related Cases:** _____

**Defendant Information:**

Defendant Name     Sonya Lewis Williams

**U.S. Attorney Information:**

AUSA Catherine Maraist                              Bar #   25781

**Interpreter:**  ☒ No  ☐ Yes     **List language and/or dialect:** _____

**Location Status:**

Arrest Date _____
_____     Already in Federal Custody as of  _____
_____     Already in State Custody
_____     On Pretrial Release

**U.S.C. Citations**

**Total # of Counts:** _____15_____     ☐ Petty   ☐ Misdemeanor   ☒ Felony

|  | **Index Key/Code** | **Description of Offense Charged** | **Count(s)** |
|---|---|---|---|
| set 1 | 18 U.S.C. 1347 | Health Care Fraud | 1 - 14 |
| set 2 | 18 U.S.C. 1957 | Money Laundering | 15 |

(May be continued on second sheet)

**Date:** __6/30/11__          **Signature of AUSA:** _____

**District Court Case Number (To be filled in by deputy clerk):** _____

**Criminal Cover Sheet**                                    **U.S. District Court**

**Place of Offense:**                    **Matter to be sealed:**   ☒ No   ☐ Yes

City              Baton Rouge            **Related Case Information:**

County/Parish   East Baton Rouge        Superseding Indictment _____   Docket Number _____
                                        Same Defendant _____   New Defendant ___X___
                                        Magistrate Case Number _____
                                        Search Warrant Case No. _____
                                        R 20/ R 40 from District of _____
                                        **Any Other Related Cases:** _____

**Defendant Information:**

Defendant Name    Lillie Lavan

**U.S. Attorney Information:**

AUSA Catherine Maraist                              Bar #   25781

**Interpreter:**  ☒ No  ☐ Yes        **List language and/or dialect:** _____

**Location Status:**

Arrest Date _____
_____        Already in Federal Custody as of    _____
_____        Already in State Custody
_____        On Pretrial Release

**U.S.C. Citations**

**Total # of Counts:** ____14____     ☐ Petty      ☐ Misdemeanor    ☒ Felony

|        | **Index Key/Code** | **Description of Offense Charged** | **Count(s)** |
|--------|--------------------|------------------------------------|--------------|
| set 1  | 18 U.S.C. 1347     | Health Care Fraud                  | 1 - 14       |

(May be continued on second sheet)

**Date:** __6/30/11__        **Signature of AUSA:** _____

**District Court Case Number (To be filled in by deputy clerk):** _____

**Criminal Cover Sheet**                                                    **U.S. District Court**

**Place of Offense:**                          **Matter to be sealed:** ☒ No   ☐ Yes

City          _Baton Rouge_          **Related Case Information:**

County/Parish  _East Baton Rouge_      Superseding Indictment _____  Docket Number _____
                                       Same Defendant _____     New Defendant  _X_
                                       Magistrate Case Number _____
                                       Search Warrant Case No. _____
                                       R 20/ R 40 from District of _____
                                       **Any Other Related Cases:** _____

**Defendant Information:**

Defendant Name    Carla M. Clark

**U.S. Attorney Information:**

AUSA Catherine Maraist                                    Bar #   25781

**Interpreter:** ☒ No  ☐ Yes       **List language and/or dialect:** _____

**Location Status:**

Arrest Date _____
_____     Already in Federal Custody as of    _____
_____     Already in State Custody
_____     On Pretrial Release

**U.S.C. Citations**

**Total # of Counts:** ____14____       ☐ Petty      ☐ Misdemeanor    ☒ Felony

| **Index Key/Code** | **Description of Offense Charged** | **Count(s)** |
|---|---|---|
| set 1    18 U.S.C. 1347 | Health Care Fraud | 1 - 14 |

(May be continued on second sheet)

**Date:** _6/30/11_         **Signature of AUSA:** _____

**District Court Case Number (To be filled in by deputy clerk):** _____